IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARYL SHIZUN SAKUGAWA, individually and on behalf of all those similarly situated in the State of Hawaii and throughout the United States of America,<br><br>            Plaintiff,<br><br>  vs.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., a Delaware corporation; CAL-WESTERN RECONVEYANCE CORPORATION, a California corporation; and DOES 1-30,<br><br>            Defendants. | CIVIL NO. 10-00028 JMS/BMK<br><br>ORDER GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT |

## ORDER GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

On September 11, 2009, Plaintiff Daryl Shizun Sakugawa ("Plaintiff") filed this action in Hawaii State Court alleging state law claims against Defendants Mortgage Electronic Registration Systems ("MERS") and Cal-Western Reconveyance Corporation ("Cal-Western") stemming from a mortgage transaction and subsequent nonjudicial foreclosure concerning real property

located at 91-1221 Keoneula Blvd, Apartment 2E2, Ewa Beach, Hawaii 96706 (the "subject property").

Currently before the court is MERS' Motion for Summary Judgment, in which it argues, among other things, that (1) Plaintiff's claims against MERS based on any misconduct in the consummation of the mortgage transaction fail because MERS was not involved in the mortgage transaction itself, and (2) Plaintiff's claims against MERS based on any misconduct in seeking nonjudicial foreclosure fail because the nonjudicial foreclosure procedure was terminated such that Plaintiff sustained no damages and any request for equitable relief is moot. Although Cal-Western has not participated in this action, at the February 14, 2011 hearing Plaintiff's counsel conceded that MERS' arguments for summary judgment apply equally to Cal-Western. That is, Plaintiff concedes that if summary judgment is entered against MERS, it should likewise be ordered against Cal-Western. Accordingly, based on the following, the court GRANTS MERS' Motion for Summary Judgment in favor of both MERS and Cal-Western.

## II. BACKGROUND

A.  **Factual Background**

In June 2005, Plaintiff sought to refinance his loan for the subject property with First Magnus Financial Corporation ("First Magnus"). MERS

Concise Statement of Facts ("CSF") ¶¶ 1-3.[1]  To that end, Plaintiff executed a note and mortgage with First Magnus, which named MERS nominee for Magnus.  *Id.* ¶¶ 3-4.  Ms. Christie Urabe (formerly known as Christie Silva), acted as the escrow officer for Fidelity National Title & Escrow for the subject property, *see* Christie Urabe Aff. ¶¶ 9, while Mie Wells, a notary and representative of Aloha Mortgage, also attended the signing of Plaintiff's loan documents.  Mie Wells Aff. ¶¶ 3, 4, 7.  There were no representatives from MERS, Aurora, or Cal-Western at the June 30, 2005 closing.  William Hultman Aff. ¶ 15; Zimmerman Aff. ¶ 5.

The Mortgage identifies First Magnus as the lender and MERS as nominee for First Magnus.  MERS Ex. N at Ex. 3.  Page 2 of the Mortgage explains that MERS "is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assignees.  MERS is the mortgagee under this Security Instrument."  *Id*.  Page 3 of the Mortgage provides that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the [subject property.]."  *Id.*  The Mortgage further provides that MERS "has the right: to exercise any or all of those interests, including, but not

---

[1] Where the parties do not dispute a particular fact, the court cites directly to MERS' CSF.

limited to, the right to foreclose and sell the Property . . . ." *Id.*

On or about July 12, 2005, Plaintiff received notice that his loan had been transferred from First Magnus to Aurora, and Plaintiff subsequently made his monthly mortgage payments to Aurora until October 2, 2008. MERS Ex. N ¶¶ 156, 158, 160; Zimmerman Decl. ¶¶ 4, 6-7. Plaintiff made no further payments after October 2, 2008, however, such that Plaintiff was notified that he was in default on the mortgage loan on October 21, 2008, November 14, 2008, November 20, 2008, and April 24, 2009. MERS Exs. I-L.

On August 10, 2009, Plaintiff received a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" ("Notice of Foreclosure"). MERS Ex. N, at Ex. 12. The Notice of Foreclosure provides that MERS, solely as nominee for Aurora, "will hold a sale by public auction on September 11, 2009 at 12:00 noon at the outside front entrance of the First Circuit Court . . . ." *Id.* The Notice of Foreclosure is signed by "Lorrie Womack, Asst Secretary," on behalf of MERS as nominee for Aurora Loan Services.[2] *Id.*

---

[2] MERS, Aurora, and Cal-Western had previously entered into an "Agreement for Signing Authority," which provides that "MERS, by corporate resolution, will grant employees of [Aurora and Cal-Western] the limited authority to act on behalf of MERS to perform certain duties. Such authority is set forth in the Resolution, which is made a part of this Agreement." MERS Ex. F. As referenced in this agreement, by corporate resolution MERS appointed several Cal-Western employees, including Lorrie Womack, assistant secretaries and vice presidents of MERS with authority to "[e]xecute any and all documents necessary to foreclose upon the
(continued...)

Despite the Notice of Foreclosure, Plaintiff retained possession and title of the subject property, and MERS has not attempted to sell the subject property. MERS CSF ¶¶ 32, 33, 42. Rather, on August 24, 2010, Aurora rescinded the Notice of Foreclosure, and has otherwise ceased to pursue a nonjudicial foreclosure against Plaintiff. Zimmerman Aff. ¶¶ 17-18. Instead, Aurora has initiated judicial foreclosure proceedings in the First Circuit Court of the State of Hawaii. MERS CSF ¶ 39.

## B.  Procedural Background

On September 11, 2009 -- the same day that the auction was scheduled to take place -- Plaintiff filed his Complaint in the First Circuit Court of the State of Hawaii, alleging claims titled (1) Unfair and Deceptive Acts and Practices; (2) Fraud and Deceit; (3) Injunctive Relief; and (4) Punitive Damages. MERS subsequently removed the action to this court.[3] On January 14, 2010, the action was removed to this court.

On November 24, 2010, MERS filed a Motion for Summary Judgment, and a Motion to Strike Class Allegations. On January 27, 2011,

---

[2](...continued)
property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member . . . ." MERS Ex. G.

[3] Although the docket lists that Cal-Western is represented by the same counsel as MERS, it appears that Cal-Western has not yet been served the Complaint.

Plaintiff filed his joint Opposition to these Motions, and MERS filed Replies on February 3, 2011. A hearing was held on February 14, 2011.

### III. **STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. **DISCUSSION**

As alleged in the Complaint, the basis of Plaintiff's claims against Defendants is that (1) at closing, Plaintiff was not provided adequate time to read and understand the terms of the note and mortgage, and the mortgage was on a form used by MERS which does not explain the meaning and effect of "power of

sale," Compl. ¶ 22, (2) Defendants slandered Plaintiff's title to the subject property, threatened foreclosure, and injured his credit standing by making the foreclosure appear that it was part of a formal court proceeding, *id.* ¶ 24; (3) the foreclosure notice was signed by Lorrie Womack, who misrepresented her position with MERS, *id.* ¶¶ 25-27; and (4) at the time of the foreclosure notice, MERS could no longer represent First Magnus or Aurora because both entities had declared bankruptcy. *Id.* ¶ 28.[4] MERS assert that summary judgment should be granted on Plaintiff's claims because Plaintiff has failed to establish a genuine issue of material fact supporting these allegations and/or liability on the part of MERS. The court addresses these arguments as they relate to Plaintiff's claims.

### A. Allegations of Misconduct at the Time of Loan Consummation

MERS argues, among other things, that Plaintiff's claims for fraud and for violation of HRS Ch. 480, to the extent based on ambiguities in the loan documents and/or conduct that occurred during the consummation of the loan transaction, are meritless because MERS was not present when Plaintiff signed the

---

[4] The Complaint also includes general allegations of misconduct by MERS. *See* Compl. ¶ 29 (asserting that MERS has been "misrepresenting who it represents when foreclosing on mortgages nationwide, and has been transferring and assigning real estate titles nationwide, by means of deception, without authorization, falsifying notarized documents in violation of the Corporation Laws of the State of Delaware in which it is incorporated, and using co-conspirators such as Cal-Western and others to be identified, in furtherance of its unlawful and illegal scheme"). Given that such allegations are not directed to Plaintiff in particular, the court focuses on Plaintiff's claims of misconduct by MERS that was directed to Plaintiff.

documents and had no duty to Plaintiff regarding the loan consummation. In opposition, Plaintiff appears to concede that these allegations lack merit. Plaintiff did not offer any evidence to counter MERS' CSF outlining relevant facts regarding the consummation of the loan, instead asserting that these facts are "not material." Pl.'s Resp. to MERS' CSF ¶¶ 1-15. Further, Plaintiff's Opposition asserts that the "sole issues" of this action are related to MERS' lack of standing to initiate and conduct nonjudicial foreclosure proceedings and Aurora's lack of standing as holder of the note and/or mortgage. *See* Pl.'s Opp'n at 3.

Plaintiff makes this concession for good reason -- MERS (1) was not Plaintiff's lender, but rather the nominee for the lender, MERS Ex. N at Ex. 3; (2) was not involved in the signing or origination of the loan, *see* Hultman Aff. ¶ 15, Zimmerman Aff. ¶ 5; and (3) had no interactions with Plaintiff regarding the consummation of this transaction. Hultman Aff. ¶ 15, Zimmerman Aff. ¶ 5. Under such facts, there is no basis to find that MERS committed any fraudulent, unfair, or deceptive acts regarding the loan consummation. *See Matthys v. Mortg. Elec. Registration Sys., Inc.*, 2009 WL 3762632, at *2 (M.D. Fla. Nov. 10, 2009) (dismissing claim against MERS for failure to disclose because there was no "duty on the part of MERS to interpret the loan documents for the Plaintiffs"); *Rodriguez v. Litton Loan Servicing LP*, 2009 WL 1326339, at *5 (E.D. Cal. May 12, 2009)

(dismissing unfair business practices claim where "Plaintiff failed to allege any facts indicating that MERS owed any disclosure duty to Plaintiff or that MERS in any way actually sought to induce Plaintiff to enter the challenged mortgage").

The court therefore GRANTS MERS' Motion for Summary Judgment on Plaintiff's claims to the extent based upon allegations regarding misconduct on the part of MERS in the consummation of the loan transaction.

**B.     Allegations of Misconduct Regarding the Notice of Foreclosure**

The Complaint asserts that Defendants engaged in misconduct in pursuing a nonjudicial foreclosure because (1) Defendants slandered Plaintiff's title to the subject property, threatened foreclosure, and injured his credit standing by making the foreclosure appear that it was part of a formal court proceeding, Compl. ¶ 24; (2) the foreclosure notice was signed by Lorrie Womack, who misrepresented her position with MERS, *id.* ¶¶ 25-27; and (3) at the time of the foreclosure notice, MERS could no longer represent First Magnus or Aurora because both entities had declared bankruptcy. *Id.* ¶ 28.  Although not necessarily alleged as such, Plaintiff asserts that his claims include "(a) MERS' lack of standing to have noticed and conducted a 2009 power-of-sale auction and to have supposedly transferred Plaintiff's 2005 mortgage thereafter to [Aurora] and (b) Aurora's lack of standing as the holder of either Plaintiff's 2005 promissory

note or 2005 mortgage." Pl.'s Opp'n at 3. Regardless of how Plaintiff's claims are characterized, they are all directed to misconduct by MERS seeking a nonjudicial foreclosure on the subject property. MERS asserts, among other things, that summary judgment should be granted because Plaintiff cannot prove that he suffered any damages and that the rescission of the Notice of Foreclosure moots any request for equitable relief. The court agrees.

Damages are a necessary element of both Plaintiff's claims for violation of HRS Ch. 480 and for common law fraud. *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 114, 148 P.3d 1179, 1216 (2006) (stating that the necessary elements to recover under HRS § 480-13 include "a violation of HRS chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages" (citations omitted)); *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 333, 47 P.3d 1222, 1246 (2002) (discussing the damages element to a fraud claim). Indeed, the Hawaii Supreme Court has explained: "the mere existence of a violation [of HRS Ch. 480] is not sufficient *ipso facto* to support the action; forbidden acts cannot be relevant unless they cause [some] private damage." *Haw. Med. Ass'n*, 113 Haw. at 114, 148 P.3d at 1216 (citations and quotations omitted); *see also Flores v. Rawlings Co.*, 117 Haw. 153, 167, 177 P.3d 341, 355 (2008).

Viewing the record in a light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff experienced any damages as a result of the Notice of Foreclosure. Cal-Western rescinded the Notice of Foreclosure and therefore the nonjudicial foreclosure did not occur. *See* Zimmerman Aff. ¶¶ 17-18. As a result, Plaintiff still retains title and possession of the subject property. MERS CSF ¶¶ 32, 33. There is no evidence on the record that the Notice of Foreclosure thwarted any attempt by Plaintiff to sell the property, MERS CSF ¶ 42, and although Plaintiff asserts that the Notice of Foreclosure "injured his credit rating," Plaintiff was in default on the mortgage loan and has presented no evidence suggesting that the Notice of Foreclosure, as opposed to his default, caused any injury to his credit rating.

Indeed, Plaintiff did not address damages in his Opposition and presented no evidence -- through affidavits or otherwise -- establishing that he has experienced *any* damages, whether an injury to his credit rating or otherwise. Instead, Plaintiff simply asserts in his Counter CSF (again, with no evidentiary support) that damages include attorneys' fees, court costs, and "emotional distress." *See* Pl.'s Resp. to MERS CSF ¶ 43. These unsupported assertions are insufficient to establish damages. First, attorneys' fees and costs are separate issues from Plaintiff's damages on his claims. For example, § 480-13(a)(1) allows

a plaintiff to sue for damages, and *then* if judgment is in his favor, the plaintiff may receive damages plus attorneys' fees and costs. Alternatively, a plaintiff may bring an action to stop an unlawful practice, and if successful, the Plaintiff may receive fees and costs. HRS § 480-13(a)(2). Second, as to Plaintiff's assertion of "emotional distress" damages, Plaintiff sets forth no evidence supporting that he experienced emotional distress, and in any event, a plaintiff may not recover emotional distress damages on a § 480-2 claim. *See Zanakis-Pico*, 98 Haw. at 319, 47 P.3d at 1232. Finally, even if attorneys' fees, costs, and emotional distress could support that Plaintiff incurred damages, Plaintiff has put forward no evidence supporting these assertions and unsupported arguments are insufficient to defeat a motion for summary judgment. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) ("[Non-moving party] cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."). Plaintiff therefore has failed to raise a genuine issue of material fact that he suffered damages. Accordingly, summary judgment is appropriate on Plaintiff's claims to the extent they seek damages due to MERS' alleged misconduct.

As to Plaintiff's requests for equitable relief, even Plaintiff appears to

acknowledge that such requests are now moot.[5] *See* Pl.'s Opp'n at 9 (conceding that "much of the relief requested on an individual basis has now become moot").

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (citations and quotations omitted). Voluntary cessation of challenged conduct renders a claim moot if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citations omitted). A defendant's voluntary change in policy only renders a claim moot if it is "'a permanent change' in the way it [does] business and [is] not a 'temporary policy that the agency will refute once this litigation has concluded.'" *Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (quoting *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000)).

The court agrees that the Notice of Rescission moots Plaintiff's claims for equitable relief -- there is no existing controversy regarding the Notice of Foreclosure because it was rescinded. In other words, no foreclosure will occur based on the Notice of Foreclosure. Although nothing prevents anyone from

---

[5] Although mootness is a question of subject matter jurisdiction properly raised under Rule 12(b)(1), *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), subject matter jurisdiction may be raised at any time or even sua sponte by the court. *See* Fed. R. Civ. P. 12(h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998).

seeking foreclosure on the subject property again (and indeed, Aurora has filed a judicial foreclosure action in Hawaii state court), any defects in that subsequent action would give rise to a separate claim from what is alleged in the Complaint, which is based on this particular Notice of Foreclosure. Thus, Plaintiff cannot seek equitable relief because the Notice of Foreclosure is void. *See Wilson v. ABN AMRO Mortg. Grp.*, 2005 WL 3275849, at *3 (D. D.C. Sept. 30, 2005) (finding that appeal of bankruptcy court's denial of injunctive relief to prevent foreclosure was moot where the debtor paid the arrearage and the foreclosure was cancelled).

In sum, summary judgment is appropriate against Plaintiff on his claims against MERS and Cal-Western.

## C. Class Action Allegations

Because Plaintiff brought this case as a class action, the court must next address whether Plaintiff can proceed as a class representative even though his individual claims are dismissed and/or moot.

In general, "[t]o continue their involvement in a suit the named plaintiff must be a member of the class which he seeks to represent at the time the class action is certified by the District Court." *Joshevama v. Office of Surface Mining*, 2007 WL 1381592, at *9 (D. Ariz. May 7, 2007) (citing *Troy v. Shell Oil Co.*, 519 F.2d 403, 404-05 (6th Cir. 1975); *Kuahulu v. Employers Ins. of Wausau*,

557 F.2d 1334, 1336 (9th Cir. 1977) (stating that an individual may represent the class even if his claim is moot, "[b]ut in order to do so, one must have been a member of the class at the time the class was certified"). Although exceptions to this general rule may exist where a plaintiff's claims become moot while *seeking* class certification,[6] the court could find no exceptions that might apply here, where Plaintiff commenced this action over fourteen months ago and has yet to take any steps to seek class certification. *See Marschall v. Recovery Solution Specialists, Inc.*, 2010 WL 3937992, at *1 (9th Cir. Oct. 5, 2010) (affirming dismissal of class claims where the plaintiff "had a reasonable opportunity to file a motion for class certification but failed to do so"); *see also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("So long as a class representative has a live claim at the time he moves for class certification, neither a pending motion nor a certified class action need be dismissed if his individual claim subsequently becomes moot."); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1046 (5th Cir. 1981) ("[A] lawsuit brought as a class action must present

---

[6] *See, e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) (holding that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined"); *Narouz v. Charter Commc's, LLC*, 591 F.3d 1261, 1264 (9th Cir. 2010) ("[W]hen a class representative voluntarily settles his or her individual claims, but specifically retains a personal stake as identified by *Geraghty* and *Roper*, he or she [also] retains jurisdiction to appeal the denial of class certification.").

justiciable claims at each stage of the litigation; if the named plaintiffs' individual claims become moot before a class has been certified, no justiciable claims are at that point before the court and the case must as a general rule be dismissed for mootness."); *Kuahulu*, 557 F.2d at 1337 (stating that although "automatic dismissal [is not required] in every case where the district court has failed to certify the class before the representative's claim has become moot," the plaintiff presented no facts suggesting that dismissal is not appropriate).

In sum, Plaintiff is not entitled to relief on his claims based on the Notice of Foreclosure and the nonjudicial foreclosure because there is no genuine issue of material fact that he experienced damages and any assertions for equitable relief are now moot. The court therefore GRANTS MERS' Motion as to Plaintiff's claims based on this alleged misconduct.

## V. CONCLUSION

Based on the above, the court GRANTS MERS' Motion for Summary Judgment in favor of both MERS and Cal-Western. Because the court grants MERS' Motion for Summary Judgment, the court DEEMS MOOT MERS' Motion

///

///

to Strike Class Allegations. The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 25, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Sakugawa v. Mortg. Elec. Registration Sys. et al.*, Civ. No. 10-00028 JMS/BMK, Order Granting Defendant Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment